### The United States District Court for the Western District of Pennsylvania

| | |
|---|---|
| **Daniel Rojas and Brandeli Rojas, on behalf of themselves and on behalf of all others similarly situated,** | **2:15-cv-00010-CRE** |
| | **Hon. Cynthia R. Eddy, U.S. Mag. J.** |
| **Plaintiffs,** | **Class Action** |
| **v.** | **Jury Trial Demanded** |
| **One Stop Personnel Services, LLP,** | |
| **Defendant.** | |

## Plaintiffs' Motion for Award of Attorney Fees

### Introduction

In its November 9, 2015 disposition of Plaintiffs' Motion for Rule to Show Cause Why Sanctions Should Not Be Imposed Against Defendant and Defense Counsel (Doc. 48)("Show Cause Motion"), the Court allowed for the possibility that Defense counsel had not acted in bad faith, but ultimately found Defense counsel's behavior to be "unreasonable and unacceptable given that both Defendant and its counsel were involved in the DOL investigations."[1] According to the Memorandum Order:

> As a result, Plaintiffs shall be entitled to a fair and reasonable amount of attorney's fees associated with the preparation of the motion for sanctions. However, because Plaintiffs failed to follow the Court's instructions by not contacting Chambers prior to filing the motion for sanctions, thereby potentially driving up the amount of attorney's fees to be sought, Defendant will be given the opportunity to respond to the requested amount.

Doc. 67 at 2-3.

---

[1] "Regardless of whether these responses to the interrogatories were made in bad faith or were rather the product of an inadvertent oversight, they were unreasonable and unacceptable given that both Defendant and its counsel were involved in the DOL investigations." Memorandum Order, Nov. 9, 2015 at 2 (Doc. 67)(citing, Fed. R. Civ. P. 26(g)).

At this juncture, Plaintiffs stress that they are not asking the Court to reconsider its rejection of the various reliefs Plaintiffs had requested in their motion. Plaintiffs fully recognize that no one would be reading the present document but for the Court having found Plaintiffs' evidence–the production of which required a great many hours of work–to have revealed the "unreasonable and unacceptable" nature of Defendant's interrogatory responses. *Id*.

Nonetheless, Plaintiffs respectfully submit that the Court should find the contingency alluded to in the above-quoted passage has not occurred, i.e., that Plaintiffs' failure to contact Chambers prior to filing their Show Cause Motion has *not* increased the amount of attorney fees requested, because it is virtually impossible to imagine this case assuming a different procedural posture even if Plaintiffs had contacted Chambers prior to October 3, 2015.

Initially, and as to a matter they hope the Court will find self-evident, Plaintiffs would never have contacted Chambers without first performing their due diligence to confirm both the factual as well as the legal bases for sanctions. The history of Plaintiffs' efforts reveals that it wasn't until mid-August 2015 that they received a response to their February 13, 2015 FOIA request to the U.S. Department of Labor. At first glance, the compliance action reports ("CARs") included in DOL's response suggested something was amiss–and quite likely, something of a highly sensitive and serious nature, given that officers of the Court were involved. Close reading of the CARs, and a comparison of their voluminous contents with Defendants' written discovery followed. Next, Plaintiffs researched the pertinent law, both under the Federal Rules of Civil Procedure and the Pennsylvania Rules of Professional Conduct. Plaintiffs also investigated the corporate ownership of Defendant, in order to confirm whether Defendant, through the use of corporate alter-egos, had avoided liability as a serial FLSA offender.

Because of the sensitive and serious nature of the matters at issue, Plaintiffs had to be thorough in their work, lest they be accused of baselessly defaming Defendant and its counsel. The preliminary tasks Plaintiffs performed, in other words, were entirely reasonable and necessary. They also represent more than two-thirds of the hours spent prior to the drafting of the within motion for fees. There can be no dispute that absent their extensive investigation and research, Plaintiffs would have been in no position to describe, in any persuasive way, their case to Chambers on or before October 3rd.

Additionally, if one were to suppose the Plaintiffs had summarized their findings to Chambers on October 3rd, rather than file their motion, it's difficult to imagine the Court proceeding along a different course. Given the gravity of the evidence Plaintiffs had amassed, it would seem the Court would have had to arrange for its formal presentation. And in that case, the parties and the Court would be occupying the same procedural posture they find themselves in today: the filing of Plaintiffs' motion, followed by Defendant's response and Plaintiffs' reply, the Court's scheduling and later cancellation of a hearing in this matter, and ultimately, the Court's issuance of its November 9th Memorandum Order.

Unlike a discovery dispute in which one side calls for a meet-and-confer to persuade its counterpart to cooperate, this matter was not susceptible to the power of collegial persuasion, and that is the reason that Plaintiffs did not contact Defendant prior to requesting this Honorable Court to impose sanctions.  Only the Court could mete out the sanctions sought by Plaintiffs. Work performed after October 3rd was concluded in preparation for the hearing that Plaintiffs had requested and which was initially ordered by the Court.

For the following reasons, Plaintiffs urge the Court to  award the fees and expenses described, below, both for the work Plaintiffs performed on their Show Cause Motion prior to October 3, 2015, and for related work performed after that date..

### Request for Attorney Fees

1.  Plaintiffs, by undersigned counsel, and pursuant to this Court's order of November 9, 2015 (Doc. 67), submit the within petition for an award of attorney fees pursuant to Fed. R. Civ. P. 26 and 37.

2.  In this FLSA and WPCL collective/class action, Plaintiffs allege Defendant deprived Plaintiffs of minimum wage and overtime compensation in violation of state and federal law.

3.  By Memorandum Order dated November 9, 2015, this Court granted in part Plaintiffs' Show Cause Motion (Doc. 48), finding that Defendant's interrogatory responses were "unreasonable and unacceptable given that both Defendant and its counsel were involved in the DOL investigations" (Doc. 67 at 2).

4.  The same Memorandum Order granted, in part, Plaintiffs' motion for an award of "a fair and reasonable amount of attorney's fees associated with the preparation of the motion for sanctions." *Id*.

5.  It is beyond dispute that Defendant and its counsel failed to disclose their involvement in prior DOL investigations. It is similarly beyond dispute that, but for Plaintiffs' pursuit of evidence furnished by a third party (in this case, the United States government) neither Plaintiffs nor the Court would have any reason to suspect that Defendant's serial answers to Plaintiffs' Interrogatory 8 were false.

4

6.     In order to avoid duplication, no hours spent reviewing the FOIA request, FOIA results, motion for sanctions, and fee petition have been claimed by Community Justice Project, its current counsel of record, Evalynn Welling and Megan Lovett, or its past counsel of Record, Megan Walker.

7.     For the reasons stated, below, Plaintiffs request an award of $32,760.00.

## I.     Lodestar Elements

8.     In *Hensley v. Eckerhart*, 461 U.S. 424 (1983), the Supreme Court held that the most useful starting point for determining the amount of a reasonable fee is the  number of hours reasonably expended on the litigation multiplied by reasonable hourly  rate. 461 U.S. at 433.

9.     The result of this computation is called the lodestar and is strongly presumed to yield a reasonable fee. *Washington v. Phila. Cnty. Ct. of Comm. Pl.*, 89 F.3d 1031, 1035 (3d Cir. 1996); *City of Burlington v. Dague*, 505 U.S. 557 (1992); *Hensley*, 461 U.S. at 434.

10.    A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation. *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).

## II.    Evidence Necessary To Meet Fee Burden

11.    To meet the burden of proving the request for attorney fees is reasonable, a fee petitioner must submit evidence supporting the hours worked and rates claimed. *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1989), quoting *Hensley*, 461 U.S. at  433. The burden then shifts to the opposing party to challenge, by affidavit or brief with

sufficient specificity to give applicants notice, the reasonableness of the requested fee.

*Rode*, 892 F.2d at 1183; *Bell v. United Princeton Properties, Inc.*, 884 F.2d 713 (3d Cir.

1989).

12.    The Third Circuit has adopted the community market rate rule for determining a

reasonable billing rate. *Student Public Interest Research Group v. AT&T Bell Lab*., 842

F.2d 1436, 1447 (3d Cir. 1988)("*SPIRG*"). The rule only requires a number of

representative affidavits from attorneys in the community who possess comparable

qualifications and skill. *Id*. In *Washington*, the Third Circuit held that a requested fee was

reasonable under the Community Market Rate Rule, based upon affidavits of other

plaintiffs civil rights attorneys in the community. *Id*., 89 F.3d at 1036; see also *Doe v.

Township of Hampton*, 1996 W. L. 805073 at *6 (WDPA 1996)(Ziegler, J.).

13.    *SPIRG* and *Washington* outline the type of evidence sufficient to establish a community

market rate, including affidavits of other plaintiffs civil rights attorneys.

14.    The stature of the attorney in the community, the trial experience he or she has acquired,

and especially the fact that trial experience was acquired as a specialist in the very kind of

case at issue, are highly relevant to determine the market rate the attorney commands.

*Kennelly v. Lemoi*, 529 F. Supp. 140, 142 (DRI 1981).


### III.    Once a Petitioner Has Offered Evidence of Time Spent and Rate, the Burden Shifts to the Opposing Party to Counter that Evidence

15.    Absent specific evidence challenging the content of a petitioner's fee evidence, a trial

court may not reduce the hourly rate requested. *Washington*, 89 F.3d at 1037; *Smith v.*

*Philadelphia Housing Authority*, 107 F.3d 223, 225 (3d Cir. 1997); *Doe*, 1996 WL 805073, *6.

16. Once a petitioner has offered evidence of time spent, the burden shifts to the opposing party to counter that evidence. When a plaintiff has met her prima facie burden and the opposing party has not produced contradictory evidence, the trial court may not adjust the requested rate downward. *Washington*, 89 F.3d at 1036; *Doe*, 1996 WL 805073, *6.

17. Contradictory evidence for this purpose does not include affidavits by defense attorneys that focus on the market rates of defense attorneys, or do not otherwise effectively challenge the content of the Plaintiffs affidavits. *Washington*, 89 F.3d at 1036. Absent specific evidence challenging the content of a plaintiff's fee evidence, a trial court may not reduce the hourly rate requested. *Id*.; *Smith*, 107 F.3d at 225; *Doe*, 1996 WL 805073, *6.

18. Finally, fees are properly awarded for work on a fee petition. *Welch*, 904 F. Supp. at 441.

### IV.    Evidence Of Billing Rates Of Plaintiffs' Counsel

19. The Affidavit included in the Appendix as **Exhibit 1** sets forth the number of hours worked by Attorney Richard S. Matesic, and the expenses incurred in this action. These hours and expenses were reasonably necessary for the successful prosecution of this case.

20. Plaintiffs are requesting an hourly rate of $325 for Attorney Matesic.

## V.     The Hourly Rates Requested Are The Prevailing Market Rates For Attorneys Of Comparable Skill, Experience And Reputation

21.    Attorney Matesic offers his own Affidavit and the Affidavits of John Stember and James

Carroll, Jr., who testify that the rate of $325 per hour is fair and reasonable for Matesic

and is well within the prevailing market rate for an attorney with his skill, experience and

reputation. (Matesic Affidavit, **Ex. 1**; Stember Affidavit, **Ex. 2**; Carroll Affidavit, **Ex. 3**).

22.    Attorney Matesic requests an award of fees for 100.8 hours at $325 per hour or

$32,760.00, as set forth in **Ex. 1** and **Ex. 1-B**.

WHEREFORE, Plaintiffs request an award of attorneys fees in the amount of

$32,760.00.

Respectfully submitted,

/s/ Richard Matesic, Esq.            Evalynn Welling, Esq.
PA ID No. 72211                      PA ID No. 31993
1007 Mount Royal Boulevard
Pittsburgh PA 15223                  Megan Lovett
rs.matesic@verizon.net               PA ID No. 316259
(412) 492-8975
(412) 492-8978 (fax)                 Community Justice Project, Ste 800
                                     429 Forbes Avenue
                                     Pittsburgh, PA 15219
                                     ewelling@cjplaw.org
                                     mlovett@cjplaw.org
                                     (412) 434-6002
                                     (412) 434-5706 (fax)