# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DANIEL ROJAS and Brandely Rojas, on behalf of themselves and on behalf of all others similarly situated, | **CIVIL ACTION** <br><br> Civil Action No. 2:15-cv-00010-CRE |
| *Plaintiffs*, | Cynthia Reed Eddy, U.S.M.J. |
| vs. | |
| One Stop Personnel Services, Limited Liability Partnership, | |
| *Defendant*. | |

**Brief in Support of Final Approval of Class Settlement, Attorneys Fees and Costs, and Service Award to Class Representatives**

Introduction

A description of the terms of the proposed settlement, the content and manner of distribution of the notice to the class, the opportunity to opt out or object to the settlement, the terms of proposed settlement fund administration and the proposed schedule for settlement implementation are set out in detail in the accompanying Motion for Final Approval of Class Settlement. This Court is respectfully requested to refer to this description of the settlement and terms of administration as set out therein.

The settlement, which is attached as Exhibit 1 to the Motion for Final Approval, was reached following over a year of litigation including removal from state to federal court, extensive discovery, and two mediation attempts.

1

Essentially, the settlement provides for distribution of a $135,000 settlement fund less any approved counsel fees and costs, and class representative service awards. The settlement provides that $92,500 of this settlement fund shall be distributed to all members of the class which had been certified as including "all persons who worked as movie theatre cleaners for the Defendant in Allegheny County, Pennsylvania at any time between February 1, 2011 and December 9, 2015." There shall be two subclasses of Class Members: Subclass A will include any Class Member who files a claim arising from work performed for One Stop between February 1, 2011 and December 31, 2012; and Subclass B will include any Class Member who files a claim arising from work performed for One Stop at any time between January 1, 2013 and December 9, 2015. A second distribution to class members will be made if $3,000 remains uncashed from the first distribution. If less than $3,000 remains, the remaining amount will go to *cy pres*. As of this time, 26 class members who timely submitted a claim form may participate in this distribution.

Along with the distribution to the class members, the settlement allows Plaintiffs counsel to request an award of $40,500 for attorneys' fees and costs, and that this request will be uncontested by Defendants. Settlement also provides for a service award of $1,000 to each of the Class Representatives.

Notices of settlement, as approved by this Court, have been sent by first class mail to all class members at their last known address, which was provided either by the Defendant, or by the class members themselves.

<u>The present settlement satisfies the applicable standard for approval.</u>

It is well settled in the Third Circuit that in assessing the fairness of a proposed settlement, a district court must consider "nine well-established primary factors" in conducting its inquiry:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.
> [*In re Pet Food Products Liab. Litig.*, 629 F.3d 333, 350 (3d Cir. 2010)] (quoting *Girsh v. Jepson,* 521 F.2d 153, 157 (3d Cir.1975)) (internal quotation marks and alterations omitted).

*Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 319-20 (3d Cir. 2011). Citing and quoting *Pet Food*, which in turn quoted *In re Prudential Ins. Co.*, 148 F.3d 283, 323 (3d Cir. 1998), the Court in *Sullivan* additionally noted that "a district court may consider several other factors 'illustrative of additional inquiries that in many instances will be useful for a thoroughgoing analysis of a settlement's terms'".[1]

Following this analysis, the Third Circuit in *In re Baby Products Antitrust Litig.*, 708 F.3d 163, 174 (3d Cir. 2013) determined that one such additional inquiry should be "the degree of direct benefit provided to the class." In that regard the Court noted that

---

[1]Quoting *Pet Food,* 629 F.3d at 350 and *Prudential,* 148 F.3d at 323, the Court in *Sullivan*, 667 F.3d at 320, continued regarding the additional inquiries a court may consider:

> [T]he maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; the existence and probable outcome of claims by other classes and subclasses; the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved—or likely to be achieved—for other claimants; whether class or subclass members are accorded the right to opt out of the settlement; whether any provisions for attorneys' fees are reasonable; and whether the procedure for processing individual claims under the settlement is fair and reasonable.

3

"[b]arring sufficient justification, *cy pres* awards should generally represent a small percentage of total settlement funds." *Id*.

The present settlement satisfies this standard.

The issues presented in this case are complex and have been litigated at significant expense. Absent settlement, this litigation is likely to continue for a considerable period. Given that there have been no objections by the class, it may be inferred that the class uniformly favors the present settlement. The present action has been litigated for about a year and a half. During that time extensive discovery was conducted. Defendant One Stop has raised numerous substantive and procedural defenses, and substantial risk of establishing liability and damages remain. Though it is unclear whether the defendant has the ability to withstand a judgment greater than the $135,000 settlement amount, this amount is within the range of reasonableness given the defenses raised which render a possibly greater recovery fully, or to a substantial extent, at risk.

The settlement was reached through a mediation process that consisted of numerous discussions, offers and counter offers before a mutually satisfactory result was obtained. A consideration for class counsel in recommending the settlement was the additional risk of not reaching class members with the further passage of time. Some class members worked for Defendants as many as 5 years ago and some have emigrated from the United States in the intervening years.

Other than necessary costs of administration and counsel fees and costs and class representative service awards as may be granted, the proposed settlement amount allocation provides that all will go to direct class member benefit. A *cy pres* allocation

4

will only be made if residual funds due to non-cashed initial payments allow this. This *cy pres* is intended to benefit, albeit indirectly, the significant number of class members who can no longer be reached.[2] No *cy pres* allocation will occur unless a second distribution to confirmed class members is economically infeasible. The Third Circuit in *Baby Products*, 708 F.3d at 173, determined that although "*cy pres* distributions are most appropriate where further individual distributions are economically infeasible, we decline to hold that *cy pres* distributions are only appropriate in this context."

The request for attorneys' fees and costs is reasonable.

"'Class counsel in a class action who recovers a common fund for the benefit of persons other than himself or a client is entitled to a fair and reasonable award of attorneys' fees from the fund as a whole.' *In re Am. Investors Life Ins. Co. Annuity Mktg. and Sales Practices Litig.,* 263 F.R.D. 226, 234 (E.D.Pa.2009), *citing Boeing Co. v. Van Gemert,* 444 U.S. 472, 278 (1980)." *In re Certainteed Fiber Cement Siding Litig.*, No. MDL 2270, 2014 WL 1096030, at *21 (E.D. Pa. Mar. 20, 2014). "When calculating attorneys' fees in [common fund] cases, the percentage-of-recovery method is generally favored. [*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,* 148 F.3d 283, 333 (3d Cir.1998)]; *see also The Manual for Complex Litigation* § 14.121 (4th ed.2004) (reporting that 'the vast majority of courts of appeals now permit or direct district courts to use the percentage method in common-fund cases')." *In re Diet Drugs*, 582 F.3d 524, 540 (3d Cir. 2009).

---

[2] As set out in the Declaration of Megan Lovett (Exhibit 2 to the accompanying Motion for Final Approval), 94 notices were sent out and 26 were returned.

"In determining what constitutes a reasonable percentage fee award, a district court must consider the ten factors that we identified in *Gunter [v. Ridgewood Energy Corp.,* 223 F.3d 190 (3d Cir.2000)], and *Prudential,* 148 F.3d 283. They are: (1) the size of the fund created and the number of beneficiaries, (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel, (3) the skill and efficiency of the attorneys involved, (4) the complexity and duration of the litigation, (5) the risk of nonpayment, (6) the amount of time devoted to the case by plaintiffs' counsel, (7) the awards in similar cases, *Gunter,* 223 F.3d at 195 n. 1; *Prudential,* 148 F.3d at 336–40, (8) the value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations, (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained, and (10) any innovative terms of settlement, *Prudential,* 148 F.3d at 338–40; *see also [In re AT & T Corp.,* 455 F.3d 160, 165 (3d Cir.2006)]." *In re Diet Drugs*, 582 F.3d at 541. "The *Gunter/Prudential* factors are not exhaustive. 'In reviewing an attorneys' fee award in a class action settlement, a district court should consider [those] factors ... and any other factors that are useful and relevant with respect to the particular facts of the case.' *AT & T,* 455 F.3d at 166." *In re Diet Drugs*, 582 F.3d at 541, n.34.

As noted, the settlement fund is $135,000 dollars and 26 class members may receive a distribution from this fund. The notice that was sent to each class member included notice that Class Counsel would seek $40,500 from the settlement fun for fees and costs. All class members were afforded an opportunity to object. No objections were filed.

An award of 30% of the settlement amount is sought. This percentage is in the typical range of approved fee amounts in other class actions. See, *In re Linerboard Antitrust Litig.,* Nos. 98–5055, 99–1000, 99–1341, 2004 WL 1221350 at *14 (E.D.Pa. June 2, 2004) (citing a Federal Judicial Center study that found that the median attorneys' fee award in federal class actions was between 27% and 30%); *In re Ikon Office Solutions, Inc. Sec. Litig.,* 194 F.R.D. 166 (E.D.Pa.2000) (approving a fee award equaling 30% of a $111 million common fund); *In re Ins. Brokerage Antitrust Litig.,* 282 F.R.D. 92, 123 (D.N.J.2012) (awarding fees to class counsel equivalent to 23% of a $62 million settlement fund); *In re Sumitomo Copper Litig.,* 74 F.Supp.2d 393, 400 (S.D.N.Y.1999) (awarding fees representing 27.5% of a $116 million common fund); *Kurzweil v. Philip Morris Cos., Inc.,* No. 94 CIV. 2373, 1999 WL 1076105, at *1–3 (S.D.N.Y. Nov.30, 1999) (granting a fee award equivalent to 30% of a $123 million common fund)." *In re Certainteed Fiber Cement Siding Litig.*, 2014 WL 1096030, at *25 (E.D. Pa. Mar. 20, 2014). In *Prudential*, the Third Circuit agreed with the District Court's analysis in that case that "percentage awards generally decrease as the amount of the recovery increases." 148 F.3d at 339.

Citing *Prudential*, the Third Circuit in *Gunter*, 223 F.3d at 195 n.1, "suggested that district courts cross-check the percentage award at which they arrive against the 'lodestar' award method, which is normally employed in statutory fee-award cases." In doing so "[t]he district courts may rely on summaries submitted by the attorneys and need not review actual billing records." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306-307 (3d Cir. 2005) (footnote omitted), *citing Prudential,* 148 F.3d at 342.

7

From the filing of the complaint until her retirement from Community Justice Project on December 31, 2015, Plaintiffs' lead counsel was Evalynn Welling, a trial attorney with 38 years of experience. In litigating and settling this action, Attorney Welling devoted 165.25 hours to the litigation of this case. Attorney Wellings's hourly rate is $425 per hour, which results in awardable fees of $70,231.25. Attorney Richard Matesic, Plaintiffs' co-counsel, has devoted 341.8 hours to the litigation of this case. His hourly rate is $350, which results in awardable fees of $119,630. In the months leading up to and following Attorney Welling's retirement, Community Justice Project attorney Megan Lovett joined the case. Attorney Lovett, who has two years of experience, has devoted 83.2 hours to the litigation of this case. Her hourly rate is $225 per hour, which results in awardable fees of $18,720. Combined, Plaintiffs' attorneys' awardable fees total $208,581.25, which is more than five times the common fund request of $40,500.

Service Awards for the Class Representatives are appropriate.

Plaintiffs additionally seek approval of service or incentive awards in the amount of $1,000 for each of the two class representatives. "The approval of contribution or incentive awards is common, especially when the settlement establishes a common fund. *See Sullivan v. DB Investments, Inc.,* 667 F.3d 273, 333 n. 65 (3d Cir.2011). 'The purpose of these payments is to compensate named plaintiffs for the services they provided and the risks they incurred during the course of class action litigation, and to reward the public service of contributing to the enforcement of mandatory laws.' *Id.*" *In re Certainteed Fiber Cement Siding Litig.*, 2014 WL 1096030, at *28.

Class representatives Daniel Rojas and Brandely Rojas have devoted considerable time on behalf of the class including assisting in the factual investigation, reviewing pleadings, and participating in numerous conferences with counsel regarding the conduct of the case and settlement.

Conclusion

In consideration of the foregoing and the Motion for Final Approval of Class Settlement with supporting declaration, this Court is requested to grant approval of this settlement as fair, reasonable and adequate.

Respectfully submitted,

/s/Megan Lovett
PA I.D. #316259
mlovett@cjplaw.org
Community Justice Project
100 Fifth Ave. Suite 900
Pittsburgh, PA 15219
(412) 434-6012

Richard Matesic
PA I.D. # 72211
1007 Mount Royal Boulevard
Pittsburgh, PA 15223
(412) 492-8975
rs.matesic@verizon.net


Counsel for Plaintiffs